# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Devante D. K.,                                          Civ. No. 20-423 (BRT)

      Plaintiff,

v.                                                      **MEMORANDUM**
                                                        **OPINION AND ORDER**

Andrew Saul,
Commissioner of
Social Security,

      Defendant.

---

Karl E. Osterhout, Esq., Osterhout Disability Law, LLC, and Edward C. Olson, Esq., Attorney at Law, counsel for Plaintiff.

Tracey Wirmani, Esq., Social Security Administration, counsel for Defendant.

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 72.1(c). (Doc. Nos. 16, 19.) Because substantial evidence in the record as a whole supports the Administrative Law Judge's ("the ALJ's") finding that Plaintiff is not disabled, and for the reasons stated below, Plaintiff's motion is denied and Defendant's motion is granted.

## BACKGROUND

### I.   Procedural History

Plaintiff filed claims for both Title II and Title XVI benefits in December 2, 2016, alleging a disability onset date of November 20, 2016. (Tr. 209, 211, 233.)[1] His claim was initially denied on May 17, 2017, and then denied again on reconsideration on August 9, 2017. (Tr. 137–41, 144–49.) He requested a hearing before an ALJ, which was held via video conference on April 10, 2019. (Tr. 49–73.) The ALJ denied Plaintiff's claim on April 26, 2019, and the Appeals Council denied his request for review on December 27, 2019, making the ALJ's decision the final decision of the Commissioner. (Tr. 1, 12–35.) Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) on January 31, 2020, seeking review of the final decision of the Commissioner. (Doc. No. 1, Compl.)

The parties have filed cross-motions for summary judgment pursuant to the Local Rules. (Doc. Nos. 16, 19.) Plaintiff requests that the Court reverse and remand the Commissioner's decision, arguing that the ALJ erred by failing to properly evaluate the opinions of Plaintiff's treating psychiatrists and therapist. (Doc. No. 17, Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") 3, 32.) Plaintiff asserts that if the psychiatrist and therapist opinions were properly weighed, additional limitations would have been included in the RFC, and that when doing so, Plaintiff should have been found "disabled" under the Act. (*Id.* at 9.) Defendant requests that the Court affirm the Commissioner's decision as "legally sound and supported by substantial evidence." (Doc. No. 20, Def.'s Mem. Supp.

---

[1]   Throughout this Opinion and Order, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 12.)

Mot. Summ. J. ("Def's Mem.") 25.) Defendant contends the ALJ properly evaluated the opinion evidence, and that his credibility findings were properly supported by the objective medical evidence on record. (*Id.* at 6–11.) Defendant also asserts the ALJ properly found the state agency psychological experts' opinions supported by the record, incorporated the appropriate work-related limitations, and even added additional limitations in his RFC finding. (*Id.* at 22–23.)

## II.    Factual Background

Plaintiff was twenty-two years old at the time of his alleged disability onset date – November 20, 2016. (Tr. 76.) He lives with his mother and father. (Tr. 55.) Plaintiff finished the 10th grade but did not graduate from high school. (Tr. 56–57.) He later attended GED classes. (*Id.*)

Plaintiff held three jobs before his alleged disability onset date, but only one of them lasted more than a few months. (Tr. 234.) First he worked part-time as a detail associate at Park Lake Carwash during the summer of 2011. (*Id.*) Plaintiff reports that he was fired from this job because he could not get along with others. (Tr. 246.) Next, he worked part-time as a dishwasher for a restaurant from early 2012 until the end of 2012. (Tr. 248–50.) Then, he worked part-time as a dishwasher at Arby's from 2013 until 2016. (*Id.*)

Plaintiff's severe impairment at issue on appeal is his schizoaffective disorder. (Tr. 18.) Plaintiff reported he started hearing voices when he was approximately 8-years-old. (Tr. 704.) His psychiatric treatment history started when he first saw a therapist in sixth grade for suicidal ideation. (Tr. 318.) When Plaintiff was 12-years-old, he attempted

3

suicide and told his grandmother he was hearing voices. (*Id.*) Plaintiff's school referred

him to a therapist in 2010. (Tr. 693.) In December 2015, Plaintiff was treated for

addiction related issues at Nuway House Inc. (Tr. 685–713.) The record then shows that

he was treated on September 30, 2016, prior to his alleged onset date. (*Id.*) At that time,

Plaintiff reported various symptoms including depressed mood, anxiety, paranoia, and

auditory and visual hallucinations. (Tr. 342.) The provider diagnosed him with psychosis,

unspecified psychosis type, hallucinations, depression unspecified depression type,

paranoia, cough, and as a marijuana smoker. (Tr. 345.)

Plaintiff reported he is unable to care for himself, although he also reported

performing some household chores including washing half of the dishes, taking out the

trash, doing laundry, shoveling snow, and vacuuming. (Tr. 61, 63, 242.) In addition, he

stated that he bathes when he is reminded to do so, and he is able to shop in stores if he is

accompanied; he does not have a driver's license so he typically walks for transportation

or receives rides from his friends or family. (Tr. 56, 242–44.) He can make change and

count money, but reported he cannot handle his own finances. (Tr. 243.) He also stated he

has difficulty sleeping. (Tr. 241.) Plaintiff has a seven-year-old daughter who he sees

every other weekend. (Tr. 648.) And Plaintiff reported that he cares for his brother on a

fulltime basis. (Tr. 849–66.) Plaintiff's hobbies include playing video games, writing

poetry, making music, and going to the movies with his friends. (Tr. 62, 244, 849–66.)

According to Plaintiff's most recent medical treatment report dated March 14,

2019, Plaintiff sees a therapist twice monthly and a psychiatrist every two months, both

located at NorthPoint Health & Wellness Center. (Tr. 305.) Additionally, Plaintiff

4

reportedly works with a social worker in Adult Rehabilitative Mental Health Services

("ARMHS") twice monthly, at Nystrom & Associates and Family Support Services. (*Id.*)

As of March 14, 2019, Plaintiff is prescribed the following medications by Dr. Peoples:

Olanzapine, Aripirazole, and Bupropion for bipolar, suicidal thoughts, and depression.

(Tr. 306.) Plaintiff acknowledged his symptoms are managed when he takes his

medication. (Tr. 323.)

## IV.   The ALJ's Findings and Decision

On April 26, 2019, the ALJ found Plaintiff "not disabled," as defined in the Social

Security Act, from November 20, 2016, through the date of the decision. (Tr. 29.) To

arrive at his decision, the ALJ followed the five-step procedure for determining whether a

person is disabled outlined by 20 C.F.R. § 404.1520(a)(4).[2]

At step one, the ALJ found that Plaintiff had "not engaged in substantial gainful

activity since November 20, 2016, the alleged onset date."[3] (Tr. 17.) At step two, the

ALJ determined that Plaintiff suffers from schizoaffective disorder. (Tr. 18.) He

considered this ailment to be severe because it had more than a minimal effect on

Plaintiff's ability to perform basic work activities as required by SSR 85-28. (*Id.*); *see*

---

[2]     "During the five-step process, the ALJ considers (1) whether the claimant is
gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the
impairment meets the criteria of any Social Security Income listings, (4) whether the
impairment prevents the claimant from performing past relevant work, and (5) whether
the impairment necessarily prevents the claimant from doing any other work." *Goff v.
Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citation omitted).

[3]     The ALJ acknowledged that Plaintiff worked after the alleged disability onset
date, but the work did not rise to the level of substantial gainful activity. (*Id.*)

20 C.F.R. §§ 404.1520(c), 416.920(c). However, the ALJ noted that although the impairment is severe, "it is not work preclusive." (*Id.*)

At step three, the ALJ determined that Plaintiff's impairment does not meet or medically equal the severity of one of the listed impairments. (Tr. 18.) The ALJ found that Plaintiff has a moderate limitation in his ability to understand, remember, or apply information; moderate limitation interacting with others; moderate limitation with regard to concentration, persistence, or pace; and moderate limitation adapting or managing himself; thus, the "paragraph B" criteria were not satisfied. (Tr. 18–19.) The ALJ also found no evidence of any decompensation in the record, no evidence of "such marginal adjustment that even a minimal increase in mental demands or change in [Plaintiff's] environment" could cause him to decompensate, and no evidence of an "inability to function outside a highly supportive living arrangement" at any point. (Tr. 19.) Thus, he found that the "paragraph C" criteria were likewise not satisfied. (*Id.*) Consequently, the ALJ determined that Plaintiff did not have an impairment that met the severity standard. (*Id.*)

The ALJ next progressed to step four and evaluated Plaintiff's RFC, considering the degree of limitation he found in the paragraph B mental function analysis. (*Id.*); *see* 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found that Plaintiff has the RFC –

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: the [Plaintiff] is limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (i.e. assembly line work); limited to simple work related decisions in using his judgment and dealing with changes in the work setting; and able to occasionally interact with supervisors and coworkers; never to interact with the public.

6

(Tr. 19–20.) Although Plaintiff testified that he cannot "work due to difficulty interacting/communicating with other persons and meeting new people," the ALJ found Plaintiff's own testimony regarding his impairment only partially credible, because his statements "are inconsistent because the alleged level of impairment is unsupported by the objective medical evidence." (Tr. 20–21.) The ALJ concluded that the objective evidence suggested Plaintiff's symptoms improved when he is medicated, and the evidence showed Plaintiff acknowledged the improvement, yet continued to be inconsistent with his compliance. (Tr. 25.)

In addition, the ALJ weighed all the medical opinions in the record. The ALJ discounted the opinion of Dr. Lusha Liu because he found her opinion to be too limiting, internally inconsistent, and generally not supported by the objective medical evidence.[4] (Tr. 27.) The ALJ gave little weight to Dr. Reba Peoples's opinion because although some of her opinion was consistent with objective medical evidence, she did not provide a basis for her conclusion regarding Plaintiff's extreme limitations.[5] (*Id.*) The ALJ also gave little weight to the opinion of Ms. LaReesa Hooper because he found her opinion internally inconsistent and too limiting.[6] (Tr. 28.) The ALJ gave the most weight to the

---

[4]     Dr. Liu is a psychiatrist, and treated Plaintiff from September 2017 to 2018. (Tr. 668.)

[5]     Dr. Peoples is a psychiatrist, and treated Plaintiff from May 2018 through 2019. (Tr. 840, 879.)

[6]     Ms. Hooper is a licensed family and marriage therapist, and treated Plaintiff from July 2018 through 2019. (Tr. 673.)

state agency consultants because they were "generally consistent with the objective medical evidence." (Tr. 25–26.) The ALJ also gave great weight to Dr. Alford Karayusuf, M.D.'s opinion because it was consistent with the medical evidence and Plaintiff's reports.[7] (*Id*.) The ALJ relied on the state agency consultants' opinion and included the additional limitation addressing Plaintiff's ability to have contact with the public. (Tr. 26.) The ALJ also included further limitations reflecting Plaintiff's ability to perform simple tasks and work without production rate pace. (*Id*.)

At step four, the ALJ acknowledged Plaintiff has no past relevant work, and therefore moved on to step five. (*Id*.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined at step five that there were jobs for Plaintiff that existed in significant numbers in the national economy. Those jobs were: cleaner, with 322,000 jobs nationally; laundry worker, with 190,000 jobs nationally; and linen room attendant, with 114,000 jobs nationally. (Tr. 29.) The ALJ therefore found that Plaintiff was not disabled, as defined in the Social Security Act, from November 20, 2016, through the date of the decision. (*Id*.)

## DISCUSSION

### I.    Standard of Review

Congress has established the standards by which social security disability insurance benefits may be awarded. The Social Security Administration ("SSA") must find a claimant to be disabled if the claimant is unable "to engage in any substantial

---

[7]    Dr. Karayusuf is a licensed psychiatrist and consultative evaluator.

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated that he cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

The Court has the authority to review the Commissioner's final decision denying disability benefits to Plaintiff. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Commissioner's decision must be supported by substantial evidence in the record as a whole, in order to be upheld. 42 U.S.C. § 405(g); *Kluesner*, 607 F.3d at 536 (citations omitted). "[T]he substantiality of the evidence must take into account whatever fairly detracts from its weight, and the notable distinction between 'substantial evidence' and 'substantial evidence on the record as a whole,' must be observed." *Bauer v. Soc. Sec. Admin.*, 734 F. Supp. 2d 773, 799 (D. Minn. 2010) (citations omitted). This test requires "more than a mere search of the record for evidence supporting the

Secretary's findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). If, after review, the record as a whole supports the Commissioner's findings, the Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Goff,* 421 F.3d at 789. The Court may not substitute its own opinion for that of the ALJ's, even if the Court would have reached a conclusion different from that of the factfinder. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

## II.   Analysis of the ALJ's Decision

Plaintiff argues the ALJ erred in his evaluation of Plaintiff's treating providers' opinions. (Pl.'s Mem. 3.) As referenced above, the ALJ gave little weight to the opinions of Dr. Lusha Liu, Dr. Reba Peoples, M.D., and Ms. LaReesha Hooper and gave great weight to the opinions of the state agency consultants and Dr. Alford Karayusuf, M.D. (Tr. 25–28.)

A treating source's "opinion is entitled to controlling weight only to the extent that it is consistent with medically acceptable clinical or laboratory diagnostic data." *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007). Therefore, the ALJ may grant a treating source's opinion less weight when it conflicts with other substantial medical evidence in the record, but the ALJ must "give good reasons for doing so." *Hey v. Colvin*, 136 F. Supp. 3d 1021, 1030 (D. Minn. 2015) (quoting *Brown v. Astrue*, 611 F.3d 941, 951–52 (8th Cir. 2010)). The Court addresses the ALJ's examination of each medical opinion in turn below.

A.      **Substantial Evidence Supports the Weight Given to Dr. Liu's Opinion**

Plaintiff argues that the ALJ erred when he gave "little" weight to the medical

opinion of Plaintiff's treating physician, Dr. Lusha Liu, M.D. (Pl.'s Mem. 23–24, 27–32.)

An ALJ should give a treating physician's opinion significant weight if it is "well-

supported by medically acceptable . . . techniques and is not inconsistent with other

substantial evidence." *House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007). Even if the

treating physician's opinion meets this criteria, it is not entitled controlling weight if it is

based on subjective complaints instead of objective evidence. *Gieseke v. Colvin*, 770 F.3d

1186, 1188–89 (8th Cir. 2014). An ALJ may also give less deference to opinions that are

internally inconsistent. *See Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005).

Here, the ALJ determined that Dr. Liu's opinion was internally inconsistent and

unsupported by objective medical evidence. (Tr. 27.) This Court agrees.

Dr. Liu opined that Plaintiff had marked and extreme limitations in numerous

areas of mental functioning including his ability to concentrate and maintain attention.

(Tr. 668–70.) Nevertheless, on January 18, 2018, Dr. Liu evaluated Plaintiff's symptoms

and concluded he had "psychosis at times but functions safely during life w[ith]

med[ication]s." (Tr. 668.) Dr. Liu identified Plaintiff's side effect as a result of taking his

medications as fatigue. (*Id*.) However, there is no evidence in the record that supports

that any continued fatigue that Plaintiff experienced was extreme.[8] And contrary to

---

[8]      In August 2017, Plaintiff went to the emergency room for severe headaches, and
the provider noted it could be a side effect of his Zyprexa medication. (Tr. 798.) Plaintiff
had been previously prescribed 20mg of Zyprexa. (Tr. 778.) Plaintiff had also reported
"excessive sedation with higher doses of Zyprexa." (Tr. 818.) Since that time, Plaintiff's

Dr. Liu's opinion, there is substantial evidence in the record showing that Plaintiff did maintain an ability to concentrate and maintain attention. *See* (Tr. 23, 319, 321, 330, 334, 654, 666, 780–81, 852, 874–75 (noting Plaintiff's responses were coherent, he had good judgment, and was oriented to time, place, and person); *see also* (Tr. 849–66 (reflecting that Plaintiff cares for his brother on a fulltime basis); (Tr. 62, 244, 849–66 (noting that Plaintiff's hobbies include playing video games, writing poetry, making music, and going to the movies with his friends)). If an impairment can be managed by medication, it cannot be considered disabling. *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004); *see* 20 C.F.R. §§ 404.1530(b), 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . ."). The ALJ found that Plaintiff's impairments were controlled by medication, and that any lapses in his mental condition were largely due to noncompliance with his prescribed treatment. (Tr. 27.) The record reflects that Plaintiff's impairments improved when he took his medications, and increased in severity only when he did not comply with his prescribed treatment plan. (Tr. 321, 324, 651, 740, 747, 820, 877.) Because Dr. Liu's opinion regarding Plaintiff's ability to concentrate and maintain attention was inconsistent with substantial evidence showing that Plaintiff's mental impairment was not disabling, so long as he took his prescribed medication, the ALJ did not err by giving Dr. Liu's opinion less weight.

---

provider lowered his dose of Zyprexa by half to only 10 mg. (Tr. 306.) And Plaintiff has acknowledged that when he had been "very consistent" with his medications, he felt a "significant improvement" in his mood and energy. (Tr. 815.)

Dr. Liu also opined that Plaintiff would need unscheduled breaks during an eight-hour workday, be absent from work more than three days per month, and needed structure from his mother. (Tr. 668–70.) However, the record, when viewed as a whole, supports the ALJ's RFC determination without those limitations. An ALJ may consider a claimant's daily activities in determining inconsistencies within a physician's opinion. *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017); *see also Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (finding an ALJ must consider all the evidence including the claimant's daily activities). Here, Plaintiff's reported daily activities were inconsistent with the severe limitations suggested by Dr. Liu. For example, Plaintiff engages in activities such as writing poetry, boxing, making music, and going to the movies, with no evidence that Plaintiff needed breaks when doing so. (Tr. 814, 820, 833.) Additionally, Plaintiff plays video games with friends for ten or more hours per day, and cares for his brother fulltime, on a daily basis. (Tr. 648, 849–66.) These daily activities are inconsistent with the limitations provided by Dr. Liu.

Furthermore, the ALJ found that Dr. Liu's opinion provided limitations that were too extreme because "[i]f [Plaintiff] were to be medicated, as noted by [Dr. Liu], he would then be able to attend work." (Tr. 27.) The ALJ compared Dr. Liu's opinion that Plaintiff has marked or extreme limitations in the majority of the areas of function to her opinion that he could function in daily life if medicated and found them to be inconsistent. (*Id.*) As listed above, Plaintiff has a demonstrated ability to engage in multiple different activities on a daily basis. And substantial evidence in the record supports that Plaintiff, although with some significant limitations which the ALJ

13

accounted for, retained the functional ability to work when he was consistently taking his

medication as prescribed. As a result, the ALJ's decision to give "little" weight to

Dr. Liu's opinion because it was too limiting, internally inconsistent, and unsupported by

the medical evidence is supported by substantial evidence and must be affirmed. *See*

*Schwandt v. Berryhill*, 926 F.3d 1004, 1011 (8th Cir. 2019) ("The results of a claimant's

medical examinations and the claimant's reported daily activities can undermine a

treating physician's opinion."); *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)

(stating that if an ALJ's decision is supported by substantial evidence, it must be affirmed

regardless of whether other evidence could support an alternative conclusion).

**B.      Substantial Evidence Supports the Weight Given to Dr. Peoples's Opinion**

Dr. Reba Peoples conducted a mental examination of Plaintiff in March 2019.

(Tr. 876.) The findings of that examination included a diagnosis of schizoaffective

disorder, bipolar type. (*Id.*) Dr. Peoples opined that Plaintiff's prognosis was fair and his

mood and anxiety improved with medication. (*Id.*) The ALJ acknowledged that this

portion of Dr. Peoples's opinion was generally consistent with Plaintiff's previous

diagnoses and treatment notes indicating improvement with medication. (Tr. 27.) The

ALJ gave "little" weight to the remaining portion of Dr. Peoples's opinion[9] for two

---

[9]      The remaining portion of Dr. Peoples's opinion included that Plaintiff would need one to two fifteen-minute-long unscheduled breaks during an eight-hour long workday, and that Plaintiff would be absent from work for more than three days per month. (Tr. 878.)

reasons: (1) the record does not support the severity of the diagnosis, and (2) Dr. Peoples did not provide a basis for the conclusions in this portion of her opinion. (*Id*.)

An ALJ may discount opinions that are inconsistent with or contrary to the medical evidence. *See Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007). An ALJ may also discount or even disregard a treating physician's opinion when the treating source's statements are conclusory, unsupported by the medical evidence, or when the ALJ's determination is justified by substantial evidence in the record as a whole. *See Rogers v. Charter*, 118 F.3d 600, 602 (8th Cir. 1997); *Ghant v. Bowen*, 930 F.2d 633, 639 (8th Cir. 1991).

The Court concludes that substantial evidence supports the ALJ's determination that the record did not support the severity of limitations Dr. Peoples provided based on his diagnosis. In May 2018, Plaintiff told Dr. Peoples that his family "noticed a difference for the better since he has been taking his psychiatric medications on a regular basis." (Tr. 840.) Plaintiff reported consistent depressive symptoms, but admitted that "his worsening depressive symptoms also seemed to fit the timeline of discontinuing his antidepressant medication." (*Id*.) Plaintiff's mother acknowledged an improvement "when he took the Abilify regularly" and Plaintiff agreed. (Tr. 824.) In November 2018, Plaintiff indicated his symptoms worsened but suggested to Dr. Peoples that the cause "may be because he missed a couple days of his medications." (Tr. 820.) In her treatment notes, Dr. Peoples observed Plaintiff "has been very consistent with medications over the past month or so and is feeling that his mood, energy, and motivation have significantly improved." (Tr. 815.) During her examination, Dr. Peoples noted Plaintiff's eye contact

15

and mood were good, memory and concentration were fair, and his insight and judgment were improving. (Tr. 817.) In March 2019, Dr. Peoples described Plaintiff's response to treatment as an "improvement in mood and anxiety with [medication]" but noted "sedation may impair ability to sustain work." (Tr. 876.) Dr. Peoples noted that it "may impair," which does not demonstrate certainty or an opinion that medical evidence actually supported that Plaintiff was or would be so impaired. And as noted above, Plaintiff's provider had previously lowered his dose of Zyprexa by half, which is what was suspected to cause the "sedation" side effect. (Tr. 306.) And Plaintiff acknowledged that when he had been "very consistent" with his medications, he felt a "significant improvement" in his mood and energy. (Tr. 815.)

If an impairment can be managed by medication, it cannot be considered disabling. *Brown*, 390 F.3d at 540; *see* 20 C.F.R. §§ 404.1530(b), 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled . . . ."). A claimant's noncompliance with a treatment plan and medications may be justified under certain conditions, including physical, mental, educational and linguistic limitations. *See* 20 C.F.R. §§ 404.1530(c), 416.930(c). The record does not support that any of those conditions applied here.

Plaintiff argued his noncompliance with his treatment plan was a result of his mental impairment. (Pl's Br. at 29–30.) However, numerous treatment notes reflect that Plaintiff's insight and judgment were fair, intact, adequate, or "fairly good." (Tr. 23, 319, 321, 334, 336, 654, 660, 666, 780–81, 828, 833.) And the record supports that Plaintiff, even with his mental impairment, had the insight to recognize that his symptoms

improved when he took his medication and that he had increased symptoms when he failed to take them. (Tr. 22, 668, 815, 817, 820, 823, 824, 840, 867.) Plaintiff acknowledged that he did not comply with his treatment because he missed his appointments where he would have received a refill prescription. (Tr. 740.) His missing appointments, however, was not attributable or symptomatic of his mental impairment. While unaffordability of medications may be a consideration for noncompliance, and while Plaintiff claimed he also could not afford his medication, the record reflects that although he knew his symptoms worsened when he did not take his medication, he "would rather save money than take his medications." (Tr. 321, 324, 651, 740, 747, 820, 877.) Therefore, the record does not support the conclusion that the medications were unaffordable, but instead that Plaintiff chose not to spend his money on them. *See Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009) (acknowledging the plaintiff had no good excuse for failing to take his medication because the medication was not unaffordable, the side effects were not unmanageable, and the plaintiff's mental impairment did not prevent him from appreciating the need to take his medication).

Therefore, based on the record as a whole, substantial evidence supports the ALJ's determination that Plaintiff's noncompliance with his treatment plan was not a result of his mental impairment. And because the record supports that Plaintiff's impairment can be managed by medication, substantial evidence also supports the ALJ's determination that the record did not support the severity of limitations Dr. Peoples provided because there is not substantial evidence to support that Plaintiff needed the number of breaks or would be absent the suggested number of days when he was medication compliant.

17

Furthermore, Dr. Peoples did not provide a basis for the conclusions she reached in her opinion. As referenced above, Dr. Peoples opined that Plaintiff has extreme limitations in his ability to complete a normal workday and work week without interruptions from psychologically based symptoms, and that he cannot perform at a consistent pace without an unreasonable number or length of rest periods. (Tr. 877.) Specifically, she indicated that Plaintiff would need one to two fifteen-minute-long unscheduled breaks during an eight hour long workday due to his anxiety or hallucinations. (Tr. 878.) And she opined that Plaintiff would be absent from work for more than three days per month. (*Id.*) The ALJ discounted this portion of Dr. Peoples's opinion because these limitations are generally inconsistent with the objective evidence and she failed to provide an explanation of how she reached her conclusions. (Tr. 27.) The ALJ noted: "For example, Dr. Peoples has opined that the claimant would miss more than three days of work per month but has failed to indicate that this is due to provider appointments or due to symptoms of the purported conditions." (Tr. 27.)

Because Dr. Peoples's opinions were conclusory and did not indicate what evidence supported her conclusions, and her opinions were generally inconsistent with the objective medical record, the ALJ did not err in giving Dr. Peoples's opinion little weight. *See Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995) (ruling that an ALJ may give a treating physician's opinion little weight when it provides only conclusory statements); *see also Casey*, 503 F.3d at 694 (noting that "conclusory opinions not backed by medically acceptable clinical and laboratory diagnostic data carry limited weight in the disability analysis").

18

### C.     Substantial Evidence Supports the Weight Given to Ms. LaReesha Hooper's Opinion

In December 2018, Ms. LaReesha Hooper, a licensed family and marriage therapist, provided a Mental Medical Source Statement. (Tr. 673–76.) Ms. Hooper acknowledged Plaintiff's schizoaffective disorder, bipolar type, diagnosis – which the ALJ found was supported by the evidence. (Tr. 28, 673.) The ALJ gave little weight to the remaining portion of Ms. Hooper's opinion because it was internally inconsistent. (Tr. 28.) This Court agrees. An ALJ may give less deference to opinions that are internally inconsistent. *See Guilliams*, 393 F.3d at 803.

Ms. Hooper opined that Plaintiff's prognosis is moderate to good with support and services. (Tr. 673.) On November 20, 2018, Plaintiff told Ms. Hooper he had been more social than usual and was making music with a friend. (Tr. 814.) Ms. Hooper's notes indicate his mood was neutral, his affect was appropriate, and his thought content was normal. (*Id*.) When Plaintiff returned to Ms. Hooper in December 2018, Ms. Hooper observed a subdued affect, normal thought content, and no indication of anxiety or other symptoms. (Tr. 811.) However, Ms. Hooper also opined that Plaintiff had marked limitation in 10 areas of function and extreme limitation in following a schedule and completing regular work days/weeks. (Tr. 674.)

The ALJ noted that Ms. Hooper only partially supported her conclusions regarding Plaintiff's marked limitations in mental functioning and extreme limitations in following schedules and completing work weeks. (Tr. 673–74.) Ms. Hooper, however, failed to provide support or cite evidence regarding her opinion that Plaintiff would need

unscheduled breaks and miss more than three days per month. (Tr. 28, 673, 675.) The
ALJ stated, "The opinion does not answer why, if the [Plaintiff's] prognosis is moderate
to good with services, he would miss this many days of work and need unscheduled
breaks." (Tr. 28.)

An ALJ may properly reject all or portions of a physician's opinion only when the
overall evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176
(5th Cir. 1995). Here, the overall evidence supports that, when on his medication,
Plaintiff's impairments were sufficiently managed such that his symptoms decreased in
severity. (Tr. 22, 321, 324, 651, 668, 740, 747, 815, 817, 820, 823, 824, 840, 867, 877.)
Here, because substantial evidence supported the ALJ's RFC determination—which did
not include a need for unscheduled breaks or multiple missed days of work—and because
Ms. Hooper's opinion was internally inconsistent and she did not indicate what evidence
supported her conclusions, the ALJ did not err in giving Ms. Hooper's opinion little
weight. *See Chamberlain*, 47 F.3d at 1494 (ruling that an ALJ may give a treating
physician's opinion little weight when it provides only conclusory statements).

### D. Substantial Evidence Supports the Weight Given to Dr. Karayusuf and State Agency Psychological Experts

Plaintiff also argues the ALJ improperly relied on the opinions of Dr. Karayusuf
and the state agency psychological experts because they did not have an opportunity to
review the record post-dating their opinions. (Pl.'s Mem. 30–31.) An ALJ does not err
when he relies on the opinions of state agency consultants, non-examining testifying
experts, and consultative examiners when they are supported by the record. *See Turpin v.*

*Colvin*, 750 F.3d 989, 994 (8th Cir. 2014); *Johansen v. Astrue*, No. 10-2076 (DWF/SER), 2011 WL 4583831, at *13 (D. Minn. Aug. 15, 2011). Courts uphold ALJ's decisions that give significant weight to the opinions of consultative examiners, testifying experts, and state agency consultants as long as the ALJ's decision is supported by substantial evidence in the record. *See, e.g.*, *Franks v. Colvin*, No. 13-2904 (MJD/FLN), 2014 WL 6911291, at *13 (D. Minn. Dec. 8, 2014) (finding the ALJ did not err by giving "significant weight" to a one-time consultative examiner); *Johansen*, 2011 WL 4583831, at *14 ("[T]he ALJ did not err by giving 'significant weight' to the opinions of state agency consultants.").

The ALJ gave great weight to the state agency consultants' opinions because the opinions were generally consistent with the objective medical evidence. (Tr. 25–26.) The ALJ also gave great weight to the opinion of consultative evaluator Dr. Karayusuf, because it was consistent with the medical evidence and with Plaintiff's reports. (*Id.*) The ALJ acknowledged that the opinions of the state agency consultants and Dr. Karayusuf were based "on file review rather than in-person examination or ongoing treatment." (Tr. 25.)

Plaintiff's argument that simply because the consultants did not have an opportunity to review the record post-dating their opinions, any reliance on their opinions by the ALJ would be erroneous, fails. "[A]n ALJ may embrace a state agency psychological consultant's opinion even if it was made before the record was fully developed." *Kuikka v. Berryhill*, No. 17-cv-374 (HB), 2018 WL 1342482, at *10 (D. Minn. Mar. 15, 2018). "An ALJ may also assign significant weight to the opinion of a

21

state agency medical consultant who did not have access to all of the records, so long as the ALJ conducts an independent review of the evidence and takes into account portions of the record the consultant had not considered." *Id,*; *accord*, *Lilja v. Berryhill*, No. 16-cv-540 (TNL), 2017 WL 1183977, at *25 (D. Minn. Mar. 29, 2017). Here, the ALJ did that.

Furthermore, the ALJ did not rely solely on the opinions of the state agency experts and Dr. Karayusuf in making his RFC determination. Indeed, the ALJ expressly stated that he considered the records subsequent to the state agency consultants' and Dr. Karayusuf's opinions. (Tr. 26.) And, although the ALJ gave great weight to the opinions of the state agency consultants and Dr. Karayusuf, he included additional limitations beyond what the state agency consultants and Dr. Karayusuf opined were necessary in Plaintiff's RFC. (Tr. 26–27 (stating the ALJ "added additional limitations due to the claimant's recent treatment and subjective complaints").) For example, the state agency consultants opined that Plaintiff could concentrate and attend to 3–4 step tasks (Tr. 86, 115), but the ALJ further limited Plaintiff to performing simple, routine, and repetitive tasks. (Tr. 19–20, 26.) And based on Plaintiff's purported decreased ability to concentrate, the ALJ also further limited Plaintiff to work without production rate pace, i.e., assembly work. (*Id*.) In addition, while Dr. Karayusuf opined that Plaintiff could understand, retain, and follow simple instructions and could have brief, superficial and infrequent conversations with co-workers, supervisors and the general public (Tr. 649), the ALJ further limited Plaintiff to no interaction with the public. (Tr. 19–20, 26.)

The Court concludes, after a review of the record as a whole, the ALJ did not err in giving great weight to the opinions of the state agency consultants and Dr. Karayusuf because his decision was supported by substantial evidence in the record. And, as is evident from the ALJ's decision and from the fact that the ALJ included limitations beyond those provided by the state agency consultants and Dr. Karayusuf, the ALJ did conduct an independent review of the evidence and took into account portions of the record those consultants had not considered. Therefore, the weight assigned was not erroneous, and the ALJ's RFC determination is affirmed.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 16), is **DENIED**;

2.      Defendant's Motion for Summary Judgment (Doc. No. 19), is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  March 25, 2021                              *s/ Becky R. Thorson*
                                                 BECKY R. THORSON
                                                 United States Magistrate Judge